## THE LIGHTER P. R. R. NO. 250.

### (District Court, E. D. New York. November 10, 1913.)

1. SALVAGE (§ 28*)—SALVAGE SERVICE—RESCUE OF DRIFTING BARGE.

A salvage award of $100 made to a tug and crew for the rescue of a loaded barge, which had gone adrift and was picked up in Buttermilk Channel, where drifting was dangerous to herself and other shipping.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 67, 69; Dec. Dig. § 28.*]

2. SALVAGE (§ 16*)—RIGHT TO COMPENSATION—SALVAGE OR TOWING SERVICE.

The action of the mate in charge of a drifting barge in first offering a tug $3 for a towing contract and then attempting to prevent it from making fast by threatening to cut the hawser with an ax did not deprive the tug of the right to a fair salvage award for the rescue of the barge, without making it so large as to encourage litigation, where no contract was in fact made, and the service was meritorious.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. § 29; Dec. Dig. § 16.*]

In Admiralty. Suit by James Brooks and others against the Lighter P. R. R. No. 250 and cargo. Decree for libelants.

Foley & Martin, of New York City, for libelants.

Burlingham, Montgomery & Beecher, of New York City, for claimants.

CHATFIELD, District Judge (orally): [1] The testimony shows that the boat was being moved around the end of the pier with the intention of letting it drift down the side of the pier with the help of the ebb tide. The boat got away through interference with the calculations of its captain because of the presence of some trucks which prevented his securing the boat by the only line which he had leading to the dock, which ran out before he could do anything to prevent it. The man Olsen upon the dock did not go for help, but under the instructions from the captain waited to see if the captain got out of calling distance. Two tugs are said to have gone by while the boat was close to the dock, and one of them inquired if help was needed and was given to understand that a tugboat was present and in control of the situation. By that time the tide had turned and the progress down the dock was apparently not rapid. The southeast wind did not have

much effect upon the boat until after this second tug had gone by and the boat got below the shed upon the wharf. Then the wind, not blowing against the tide, but across the tide, carried her over towards Governor's Island, and the testimony of the libelant is that about half past 3 she was picked up well over towards the lower point of Governor's Island and in a position where drifting was dangerous to other shipping and to the boat and also where assistance was needed.

It must be assumed that if the Gertrude left City Island anywhere after noon and around high tide she could not have reached Buttermilk Channel much before half past 3, and it must be that the mate of the barge is mistaken in the time that he was drifting, or else that the performance did not start as soon as he thinks, unless Capt. Bull is mistaken in the exact time of his arrival. It does not seem to me that that error has much to do with the situation, except that Capt. Bull's testimony about the occurrence and the time is less open to imperfect recollection or judgment than that of the mate, who was being carried away from the dock and who had other things to think of than his whereabouts at a particular moment.

[2] So far as the $3 is concerned, there would seem to have been some mention of $3, and it is evident that the mate tried to make a contract of $3 and also tried to prevent responsibility for salvage service. In other words, the mate apparently tried to compel a towing service by being ready with his ax to prevent being rescued. Under such circumstances the use of violence to prevent rescue is something which the rescued would have to settle with his owner, and his judgment as to whether he was in greater danger from the situation, or whether the danger of the price of rescue was more than that of the situation, has to be viewed from the standpoint of the case, and is, as has been said, of interest to the owner.

But whether or not salvage should be allowed depends upon the actual situation, and whether some one was hired to tow the boat. Such hiring requires a meeting of the minds, and while I am inclined to think something was said about $3, I have not any idea that such an offer was accepted or that a hiring service was entered into. The mate of the boat apparently minimized his need, and thought that he was going to be able, by persuasion or by force, to accomplish a hiring. I think he failed to do it. I think that a salvage service, even as shown by willingness to pay $25 to avoid suit, was a better understanding of the situation than the offer of $3 for a hiring contract.

I am not satisfied, however, to take $25 as the measure of compensation. A barge of this apparent value should hardly be allowed to go to destruction solely because she was of the "watermelon" type of build and might bring less in the market than if of different shape. It seems to me there is a principle involved that requires more consideration than the dispute as to the fact itself. I have therefore stated the position more or less at length.

There was no danger to the tug. The service was one that Olsen could have hired a boat inside of the Atlantic Basin to perform for perhaps the expense of an hour's towing, if a boat were available. Nor do I think the situation can be viewed from the single stand-

point of having been compelled to bring suit, for that was determined from the amount of the $25 offer.

A wide divergence of facts and a rescue under such differing statements of the situation (unless bad faith or deceit is shown by the salvors in making their claim) compel a fair award, without thereby making it attractive to litigate salvage claims that ought not to be so productive as they would be if rewarded by a large recovery.

I should say that $100 was ample for the services rendered under the conditions of wind and tide as shown in this case. I give a decree for $100, one-half to the crew and one-half to the owner. There was no risk at all to the owner of the boat.